## PANKO v. ENDICOTT JOHNSON CORPORATION.

District Court, N. D. New York.

Sept. 10, 1938.

Jacob Klein, of Brooklyn, N. Y. (Louis Rothbard, of Brooklyn, N. Y., of counsel), for plaintiff.

Swartwood, Mills, Wilde & Pritchard, of Endicott, N. Y., for defendant.

COOPER, District Judge.

The sole question for decision here is whether the plaintiff, a resident of Pennsyl-

vania, bringing an action in this Court on the ground of diversity of citizenship, for negligence arising in this district of New York, is civilly dead and cannot maintain his action because of the fact that prior to the negligence he was convicted of murder in the first degree in the State of Florida and sentenced to life imprisonment in that state.

The defendant contends that by virtue of Section 511 of the Penal Law of the State of New York, Consol.Laws, c. 40, the plaintiff is civilly dead and cannot bring an action in the State Courts or in the Federal Courts in this State.

Section 511 reads as follows:

"§ '511. Consequence of Sentence to Imprisonment for Life

"A person sentenced to imprisonment for life is thereafter deemed civilly dead."

The plaintiff contends that Section 511 applies only to sentences to imprisonment for life imposed by the State Courts of the State of New York and that the section has no extraterritorial effect and does not apply to persons sentenced in any other state.

Neither Counsel nor Court have been able to find any authority deciding this question.

Civil death is not defined by the Statutes of New York.

By the early common law the status of one civilly dead was very much like that of one physically dead—in the law he was practically non-existent. See Avery v. Everett, 110 N.Y. 317, 18 N.E. 148, 1 L.R.A. 264, 6 Am.St.Rep. 368.

This status was gradually modified both by the Common Law Courts and by statute so that in certain aspects the convict civilly dead had some civil rights, attributes or obligations which the law recognized.

But the right to sue was not restored under the common law of this state nor by statute preceding Section 511 of the Penal Law. Under that section a life convict sentenced in this state cannot sue.

If the Florida sentence to life imprisonment brings plaintiff within Section 511 of the Penal Law of New York, he cannot maintain this action.

In Florida there is no statute declaring civilly dead one sentenced to life imprisonment.

The defendant asserts that in the absence of Florida State Statute the common law prevails in that state. The common law of Florida, asserts the defendant, made such a convict civilly dead and without right to sue.

There are no authoritative decisions in Florida holding one sentenced to life imprisonment to be civilly dead under the common law of Florida and without right to sue.

The highest Court in Florida has held to the contrary in Willingham v. King, 23 Fla. 478, 2 So. 851.

The imprisonment there involved was, as here, life imprisonment. The Court said [page 853]: "[That the plaintiff] is not civilly dead by reason of such [life] imprisonment ' * * * seems to be the rule in this country. * * *" And again: "If he can sue in a chancery court, as we think he may, he can also sue in a common-law court, the choice depending on the nature of the subject-matter of the suit."

The defendant sharply criticizes this case, contending that the decision on this point was contained in a single sentence and that the only authority cited to support that view was the New York case of Platner v. Sherwood, 6 Johns.Ch. 118, which, defendant asserts, holds to the contrary.

Despite some justification for the criticism, it was a decision by the highest Court of Florida that a life convict could sue and declares the law of Florida.

That the common law can be changed by the Courts of a State as well as by the Legislature must be accepted. While for many years it was held by the Supreme Court beginning with Swift v. Tyson, 1842, 16 Pet., U.S., 1, 10 L.Ed. 865, cited by the defendant, that in the interpretation of the common law or general law, as distinguished from statute law, the Federal Courts will follow their own conception or interpretation of the general law, the Supreme Court has very recently in the case of Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, decided by a divided Court that the Federal Courts must accept not only the interpretation of the state statutes by the highest state Court, but also the decisions of the highest state courts as to the common law or general law in such state.

The Supreme Court in the Erie Case said [page. 822]: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern." Swift v. Tyson was expressly overruled.

■ It follows, therefore, that under the laws of Florida the plaintiff could sue in that state despite his sentence to life imprisonment in that state.

Accepting the defendant's contention that the capacity to sue must be determined by the law of the forum and not by that of the situs, the situation is that plaintiff was not incapacitated to sue in Florida and he was not sentenced to life imprisonment in New York.

Does Section 511 of the Penal Law of New York impose upon the plaintiff the additional penalty of depriving him of the right to sue in the Courts of New York, the forum, by reason of life imprisonment of Florida, when the laws of Florida could not do so?

Do the New York laws have such extra-territorial effect?

■ The rule in both State and Federal Courts in applying State laws is that unless expressly so declared in statute, such state laws can have no extraterritorial effect. They must be construed as applying only to the confines of the state in which they were enacted.

In People v. Gutterson, 244 N.Y. 243, 155 N.E. 113, the Court said [page 114]: "In the absence of express statute, conviction or sentence under the laws of another state, government, or country can have no effect by way of penalty or of personal disability or disqualification, beyond the limits of the state in which the judgment is rendered. Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Sims v. Sims, 75 N.Y. 466."

In Logan v. U. S., 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429, the Court said [page 303]: "At common law, and on general principles of jurisprudence, when not controlled by express statute giving effect within the state which enacts it to a conviction and sentence in another state, such conviction and sentence can have no effect, by way of penalty, or of personal disability or disqualification, beyond the limits of the state in which the judgment is rendered. Wisconsin v. Pelican Insurance Co., 127 U.S. 265, 8 S.Ct. 1370 [32 L.Ed. 239]; Commonwealth v. Green, 17 Mass. '515; Sims v. Sims, 75 N.Y. 466; National Trust Company v. Gleason, 77 N.Y. 400; Story, Confl.Laws, § 92; 1 Greenl.Ev. § 376. It follows that the conviction of Martin in North Carolina did not make him incompetent to testify on the trial of this case."

While there are no cases construing Section 511 of the Penal Law as permitting or forbidding one sentenced to life imprisonment in another state to sue in this state, there are decisions under similar statutes of this state, holding that the disqualification imposed by the laws of another state will not be enforced in this state even though the disqualification would have been enforced had the conviction taken place in this State.

Some of such cases are: Sims v. Sims, 75 N.Y. 466; National Trust Company v. Gleason, 77 N.Y. 400, 33 Am.Rep. 632; Van Voorhis v. Brintnall, 86 N.Y. 18, 40 Am.Rep. 505.

These cases relate to disqualifications as a witness at a time when the New York Statute disqualified a state prison convict from being a witness.

See also for analogous decisions under other state statutes: People v. Gutterson, 244 N.Y. 243, 155 N.E. 113; Matter of Cohen's Will, 164 Misc. 98, 298 N.Y.S. 368.

In People v. Gutterson, the trial Court under appropriate State Statute gave the increased sentence arising from a prior conviction. The prior conviction was for using the mails to defraud, in the Federal Court in the State of New York.

The Court of Appeals reversed and held that an indeterminate sentence as upon a first conviction should have been given under Section 2189 of the Penal Law, which provides that: "A person never before convicted of a crime punishable by *imprisonment in a state prison,* * * * who is convicted in any court in this state of a felony other than murder first or second degree * * * and sentenced to a state prison, shall be sentenced thereto under an indeterminate sentence. * * *"

The Court held the prior conviction referred to in Section 2189 was confined

to a conviction in a State Court and that the Conviction in the Federal Court was not a prior conviction within the meaning of Section 2189.

Defendant asserts that since the statute antecedent to Section 511 of the Penal Law provided that the sentence be "to life imprisonment in a state prison" the omission in the present statute (Section 511 of the Penal Law) of the words *"in a State prison"* clearly indicates the legislative intent to include sentences to life imprisonment in any state.

This cannot be upheld, for the words "in a state prison" seem mere surplusage.

Sentence to life imprisonment must of necessity be in a state prison. There is no other place in which a life sentence could be served or to which a life convict could be sentenced. The same is not necessarily true where the sentence is for a term of years, as in some of the cases cited by the parties.

There remains to be considered the authority which defendant's counsel in their able brief, contend is determinative of the question here and controlling on this Court. That is the case of Jones v. Jones, 249 App.Div. 470, 292 N.Y.S. 705, affirmed without opinion in 274 N.Y. 574, 10 N.E.2d 558.

In that case the second husband sued the defendant wife for annulment of marriage. The defendant wife first married one Montgomery in Virginia in 1911 and no decree had been granted dissolving or annulling that marriage. In January 1922, the first husband, Montgomery, was convicted of felony in North Carolina and finally sentenced to death. The conviction was affirmed June 11, 1923 and a date set for the execution. Three days before the execution date the Governor of North Carolina commuted the sentence to life imprisonment.

In May 1923, the wife married the plaintiff Jones in the State of New York and they lived together as husband and wife until 1935, when the husband brought an action for annulment of the marriage on the ground that the defendant at the time of the second marriage had a husband living to whom she was still married.

At the time of the trial, the first husband was living and at liberty, presumably having been pardoned.

The Appellate Division held that under Section 6, Subdivision 2 of the Domestic Relations Law, Consol.Laws, c. 14, the first marriage was dissolved and the second marriage was valid, reversed the judgment for the plaintiff and directed that the complaint be dismissed.

Section 6 reads in part as follows: "§ 6. Void Marriages.—A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either: * * * 2. Such former husband or wife has been finally sentenced to imprisonment for life."

The affirmance by the Court of Appeals only affirmed what was decided by the Appellate Division. There is no discussion in the Appellate Division opinion that that Section 6, Subdivision 2, covers imprisonment imposed by courts outside of the State of New York. That point was not expressly passed upon by the Appellate Division.

Apparently it was assumed by the Court, without so deciding, that life imprisonment specified by Section 6, Subdivision 2, covered life imprisonment wherever imposed in the United States. But so far as appears that question was not raised by counsel or not brought to the attention of the Court in the Jones Case.

The only reference to the extra-territorial effect of any New York Statute is the following from the brief of the plaintiff in the Jones Case, as stated in defendant's brief here:

"It is to be noted that the legislature expressly and specifically limited this disability or deprivation of marital and parental right *after the exercise of executive clemency* (italics mine) to persons who had been sentenced to life imprisonment in this state, thus excluding persons who had to undergo any other kind of punishment and persons who were not sentenced in this state.

"Montgomery, the respondent's husband, now living, does not come within the purview of Section 58, Domestic Relations Law, because he was not sentenced to life imprisonment nor was he sentenced in this state."

Section 58, thus referred to by the plaintiff's Jones Case, reads as follows: "Pardon Not to Restore Marital Rights. A pardon granted to a person sentenced to

682

imprisonment for life *within this state* [italics mine] does not restore that person to the rights of a previous marriage or to the guardianship of a child, the issue of such a marriage."

It is clear from a reading of the section that it refers to a pardon granted in this state to one imprisoned for life in this state as not restoring the marital status.

It seems, therefore, that while the Court assumed that Section 6, Subdivision 2, of the Domestic Relations Law of New York covered life imprisonment outside of the State, the question was not raised by counsel and not decided by the Court.

Moreover, the North Carolina Life convict, Montgomery, was not a party to the action in Jones v. Jones and his status was not determined. Only the wife's status was determined. He had no opportunity to ask the Court to decide his status nor was there any discussion in the opinion in the Jones Case as to whether or not under the laws of North Carolina the pardon of the life convict did or did not restore the marital rights of the convict. It was certainly not res adjudicata as to him.

The Jones Case seems to be out of harmony with People v. Gutterson, supra, and Logan v. United States, supra, and the line of cases like Sims v. Sims, supra, in which territorial limitation of state statutes is decided.

Though Section 6, Subdivision 2 of the Domestic Relations Law of New York uses the identical words of Section 511 of the New York Penal Law, viz:—"Sentenced to imprisonment for life," it seems that the Jones Case is distinguishable from the case here and should not be held controlling here.

The conclusion reached, therefore, but not without some hesitation, is that the Florida sentence to life imprisonment does not bring plaintiff under Section 511 of the Penal Law of New York; that he is not civilly dead in this State and that he may maintain this action.

The motion to dismiss the complaint and set aside the judgment on the ground that the plaintiff had no legal capacity to bring and maintain this action is denied.

Judgment may be entered and stay of execution granted for sixty days.